338 So.2d 158 (1976)
John W. ROBERTS d/b/a Shady Grove Trailer Park, Plaintiff-Appellee,
v.
HANOVER INSURANCE COMPANY, Defendant-Appellant, and
James B. Wells, Defendant-Appellee.
No. 13005.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1976.
*159 Blanchard, Walker, O'Quin & Roberts by J. Edgerton Pierson, Jr., Shreveport, for defendant-appellant Hanover Ins. Co.
Mayer, Smith & Roberts by Paul R. Mayer, Shreveport, for plaintiff-appellee John W. Roberts d/b/a Shady Grove Trailer Park.
James B. Wells & Associates by James B. Wells, Bossier City, for defendant-appellee James B. Wells.
Before PRICE, HALL and JONES, JJ.
HALL, Judge.
This is a concursus proceeding instituted by John W. Roberts to determine entitlement to $984.64 deposited into the registry of the court by Roberts in payment of a judgment rendered in the suit of Pollard v. Roberts. The claimants are James B. Wells, attorney for Pollard in the suit, who claims preference under LSA-R.S. 9:5001[1] and Hanover Insurance Company, who claims preference as a judgment creditor of Pollard who seized Pollard's interest in the suit and subsequently instituted garnishment proceedings against Roberts. In affirming the judgment of the district court in favor of Wells, we hold that LSA-R.S. 9:5001 gives the attorney a first privilege over the judgment proceeds.
Pollard and Wells executed a contingent fee contract in which Pollard agreed to pay a fee of 40% of any amount collected and by which Pollard assigned Wells a 40% interest in his claim against Roberts in accordance with LSA-R.S. 37:218. Subsequently, while the suit against Roberts was pending, Hanover seized Pollard's interest in the suit under a writ of fieri facias obtained pursuant to a judgment rendered in favor of Hanover against Pollard in another suit.
Judgment was rendered in favor of Pollard against Roberts. Subsequently, Hanover filed a petition for garnishment which was served on Roberts, who subsequently answered the petition and admitted the indebtedness. Roberts then provoked this concursus. Thereafter, Wells filed a copy of the written contingent fee contract in the record of the Pollard v. Roberts suit and in the record of this concursus proceeding.
The trial court decided that the claim of James B. Wells outranked that of Hanover Insurance Company and rendered judgment in favor of Wells for 40% of the amount deposited into the registry of the court and in favor of Hanover for the remaining 60%. On appeal, Hanover argues that the attorney's privilege claimed by Wells was effective against third persons only from the date the employment contract was filed in the public records and is, therefore, inferior to the privilege of Hanover arising out of the earlier seizure and garnishment.
Under LSA-C.C. Arts. 3186 and 3187, privileges are ranked by their nature and by the rank given the privilege by the law establishing it. LSA-R.S. 9:5001 grants to attorneys a privilege of first rank for their fees on judgments obtained by them and on the property recovered thereby. LSA-C.C.P. Art. 2292 gives the seizing judgment creditor a privilege on the property seized entitling the creditor to preference over "ordinary creditors". LSA-R.S. 13:3865, relating to seizure of the interest of a litigant in a lawsuit, gives the seizing creditor a "lien or preference" on whatever is realized by his debtor out of the suit, but *160 does not purport to elevate the rank of the preference stipulated in LSA-C.C.P. Art. 2292 for seizures generally. An attorney with a privilege of first rank is not an ordinary creditor. By its nature, Wells' privilege for attorney's fees outranks that of Hanover as seizing creditor against the judgment obtained by the attorney and the proceeds thereof.
The statute creating and ranking the attorney fee privilege contains no requirement that there be a written contract nor that any written contract or other written evidence be filed or recorded in order for the privilege to come into existence and be effective as against other creditors of the client who may have claims against the judgment obtained by the attorney.
In arguing that the privilege is not effective against third parties until it is recorded, Hanover relies on the provisions of LSA-R.S. 37:218[2]. Hanover argues that since LSA-R.S. 9:5001 and LSA-R.S. 37:218 were both originally enacted by Act 124 of 1906, they must be read together and the recordation provisions of LSA-R.S. 37:218 should be applied to the privilege granted by LSA-R.S. 9:5001.
Although LSA-R.S. 9:5001 and LSA-R.S. 37:218 were both contained in Act 124 of 1906, the two sections were meant to deal with separate problems. The attorney fee privilege on judgments obtained by the attorney was established by even earlier legislation. The first paragraph of the 1906 act (now LSA-R.S. 9:5001) amended the attorney fee privilege provisions to subject not only the judgment but any property recovered thereunder to the privilege. The second paragraph of the 1906 act (now LSA-R.S. 37:218) for the first time, authorized and recognized a written contract between a client and an attorney whereby the attorney may acquire as his fee an interest in the subject matter of a suit or claim. It also authorized a stipulation against settlement or other disposition of the suit or claim by either party without the consent of the other. It provided that either party may file the written contract with the clerk of court and thereafter any settlement or other disposition made of the suit or claim by either the attorney or the client without the written consent of the other is null and void. LSA-R.S. 37:218 provides to an attorney a method of protecting himself in the recovery of his fee where he has a written contract granting him an interest in the subject matter of the suit, which method is in addition to and supplemental to the privilege granted by LSA-R.S. 9:5001.
The history of these statutes and their intent and purpose is discussed in detail in Davis Finance & Securities Co. v. O'Neal, 160 So. 463 (La.App.Orl.1935), a case closely in point with the instant case. Davis involved competing claims by an attorney and a seizing creditor against an amount owed under a judgment obtained by the attorney. The seizing creditor made essentially the same arguments that are made in the instant case. The court recognized the attorney's privilege as a first privilege priming the privilege of the seizing creditor and held that no written contract or recordation thereof was essential for the privilege to come into existence. The reasoning of Davis is sound and is applicable here.
Hanover cites Palmer & Palmer v. Stire, 195 So.2d 706 (La.App. 1st Cir. 1967). In *161 Palmer, an attorney obtained a judgment for his client, Ory, against one Griffin. Ory and Griffin, without the attorney's knowledge or consent, settled the judgment and Ory had the judgment canceled from the mortgage records. Griffin subsequently granted mortgages on his property in favor of other parties. The attorney sued to have the judicial mortgage created by recordation of the judgment reinscribed and recognized as a first mortgage against Griffin's property. There was no written contract between the attorney and client filed of record and the court quite properly reached the result that the client was not prohibited from settling his claim against Griffin and cancelling the judicial mortgage. The attorney was not entitled to have the judicial mortgage reinstated, particularly not to the prejudice of Griffin's mortgagees who relied on the public records.
Language employed in the Palmer case on which Hanover relies must be read in the context of the facts and issues involved in that case, which are in no way similar to those involved in the instant case. Palmer is authority only for the proposition that a written contract must be filed before an attorney can, under LSA-R.S. 37:218, set aside a settlement or disposition of a claim made by his client.
Selly v. Watson, 210 So.2d 113 (La.App. 1st Cir. 1968), also cited by Hanover, stands for the proposition that the attorney's privilege must be asserted in some manner prior to disbursement of the judgment proceeds to a third party. The court in Selly noted that the attorney could have preserved his privilege in that case by filing an affidavit of record or intervening in the proceedings by which the funds were disbursed. The court explained:
"Had relator's claim for attorney's fees been filed at any time prior to disbursements of the proceeds by the Sheriff said claim would have taken its regular and lawful place as first privilege."
Wells asserted his claim prior to disbursement of the proceeds. His privilege, therefore, takes first rank as provided by LSA-R.S. 9:5001. Accordingly, the judgment is affirmed at appellant's costs.
Affirmed.
NOTES
[1] LSA-R.S. 9:5001 provides:

"A special privilege is hereby granted to attorneys at law for the amount of their professional fees on all judgments obtained by them, and on the property recovered thereby, either as plaintiff or defendant, to take rank as a first privilege thereon."
[2] LSA-R.S. 37:218 provides:

"By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution or defense of which he is employed, whether the claim or suit be for money or for property. In such contract, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client's domicile. After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition had been made."