CULPEPPER, Judge.
The plaintiff, Earl John Olivier, filed this suit for a writ of mandamus against Donald Doga, clerk of court of St. Landry Parish, ordering the clerk to cancel a judgment in favor of plaintiff’s former wife, Marsha Mock Fontenot, and against plaintiff for the sum of $16,363. The judgment arose out of a suit for the partition of community property. Plaintiff and his former wife compromised the judgment, and she executed a proper authorization to cancel it. The wife’s attorney, Louis B. Viviano, had filed a contingent fee contract two days before the filing of the authorization for cancellation. The attorney intervened, asserting a lien on the judgment under both the contingency fee contract and under the attorney’s lien provided by LSA-R.S. 9:5001. The attorney contends the judgment cannot be canceled without his consent. Although he gave no reasons, the district judge ordered the judgment canceled “except to the extent of the amount of intervenor’s fee at whatever sum same may be fixed in proper proceedings.” The attorney intervenor appealed. Plaintiff also appealed.
The substantial issues are: (1) Is an attorney’s contingency fee contract, under LSA-R.S. 37:218, to represent the wife in a suit to partition community property void *469 as against public policy, where the contract is entered into after a judicial separation but before divorce? (2) Where the attorney has a special privilege on the judgment under LSA-R.S. 9:5001, is he one of the “parties interested” under LSA-C.C. Article 3371, so as to require the attorney’s consent for the cancellation of the judgment, even though the attorney has not filed in the mortgage records an affidavit or other notice to third parties of his privilege under R.S. 9:5001?
The briefs of counsel for both parties state some facts which are not supported by evidence in the record before us. Nevertheless, the following essential facts are sufficiently shown by evidence and are not disputed.
On November 18, 1974, Mrs. Marsha Mock Olivier entered into a contingency fee contract with Louis B. Viviano, attorney at law to represent her “in a suit to partition the community formerly existing between my husband, Earl John Olivier, and myself.” Although the record does not show the date, Mr. and Mrs. Olivier had been legally separated a short time before the contingency fee contract at issue was signed. Pursuant to this contract, attorney Viviano filed Civil Suit No. 67,968 entitled “Marsha Mock Olivier v. Earl John Olivier” for a partition of the community. In 1975, Mr. and Mrs. Olivier were divorced, but shortly thereafter they remarried. As far as we can determine from the record before us, no judgment of partition of community property was ever rendered in the first suit, No. 67,968.
Mr. and Mrs. Olivier were again divorced, and in 1977 a new suit for partition of community property was filed, this suit bearing No. 73360-2 entitled “Marsha Mock Fontenot v. Earl John Olivier.” On April 28, 1978, a judgment was rendered in Suit No. 73360-2 in favor of Marsha Mock Fon-tenot and against Earl John Olivier for the sum of $16,363.22. This is the judgment at issue, which plaintiff seeks to cancel, and as to which attorney Viviano asserts a privilege.
On May 23, 1978, attorney Viviano filed in the record of Civil Suit No. 73360-2 and in the mortgage records of St. Landry Parish, the contingency fee contract of date, November 18, 1974, his purpose apparently being to assert under this contract a privilege on the judgment of April 28,1978. On May 25,1978, Earl John Olivier, plaintiff in the present mandamus proceeding, filed in the office of the clerk of court of the Parish of St. Landry an authorization by Marsha Mock Fontenot to cancel the judgment in No. 73360-2, stating that the judgment had been compromised. Pursuant to this authorization by Marsha Mock Fontenot, a deputy clerk canceled the judgment on May 25, 1978.
On June 7, 1978, the clerk of court, Mr. Donald Doga, wrote a letter to Mrs. Marsha Mock Fontenot advising her that the cancellation of the judgment had been withdrawn “due to the fact a contingency contract was executed by you and Mr. Louis Viviano and filed on May 23, 1978, and this contract is still in effect.”
On June 9, 1978, Earl John Olivier filed the present suit for a writ of mandamus ordering the clerk of court to cancel the judgment.
On June 12, 1978, attorney Viviano obtained from the office of the clerk of court a certified copy of the judgment of April 28, 1978, and Viviano typed on the bottom of the judgment a “Notice Of Privilege”, in which he stated that the judgment was subject to a lien for his attorney’s fee under R.S. 9:5001. He filed this in the suit record in No. 73360-2 and in the mortgage records.
The first issue is whether the contingency fee contract of date, November 18, 1974 is void as against public policy. As stated above, this contract was entered into after Marsha Mock Olivier was legally separated from Earl John Olivier, but before they were divorced the first time. In Aucoin v. Williams, 295 So.2d 868 (La.App. 3rd Cir. 1974), writ refused, 299 So.2d 798 (La.), an attorney entered into a contingency fee contract to defend the wife in a divorce action by her husband. The stipulated con *470 tingent fee was one-third of any community property received by the wife. We held that the contract was void as it offended public policy, citing Succession of Butler, 294 So.2d 512 (La.1974). We held:
“. . . the rationale of Butler is that such a contingency fee contract should neither induce nor hinder a reconciliation of the parties. At the time Mrs. Alfred entered into this contract with Mr. Au-coin, she was married to Mr. Alfred and the payment of the fee was contingent upon a divorce. Such a contingency fee contract could have hindered a reconciliation before the divorce judgment was signed. The rationale of the rule is to allow the parties to decide whether to become reconciled or not without pressure from attorneys because of contingent fees predicated on a divorce decree.”
In relying on the Butler case, we quoted the following strong policy statement by our Supreme Court in Butler:
“ ‘It is not the fact that any evil result grew out of the contract in the case at bar which strikes it with nullity; it is the tendency which approval of such contracts would have to produce evil results in other cases which makes them repro-bated by the law.”
Applying these rules to the present case, it is clear that the contingency fee contract entered into between Louis B. Vi-viano and Mrs. Marsha Mock Olivier on November 11,1974, at a time when kr. and Mrs. Olivier were still married, is void as offending public policy.
Since the contingency fee contract is void as against public policy, it can have no effect either in the first suit for partition of the community property, which apparently was never completed, or in the suit for partition which resulted in the judgment at issue of date, May 25, 1978. Thus, even though attorney Viviano filed the original contingent fee contract in the record in Suit No. 73360-2 and in the mortgage records on May 23, 1978, which was two days before the judgment was canceled on May 25,1978, the contract, being null and void, did not have the effect of either creating or giving notice of a privilege on the judgment under LSA-R.S. 37:218.
The next issue is whether attorney Vivi-ano has a special privilege on the judgment under LSA-R.S. 9:5001, so that his consent was required for the cancellation of the judgment, even though he had not filed in the mortgage records an affidavit or other notice to third parties asserting a lien under R.S. 9:5001 on the judgment. As stated above, attorney Viviano did obtain a certified copy of the judgment and typed on it a “Notice Of Privilege” which he filed in the suit record and in the mortgage records on June 12, 1978, but this was after the clerk had received on May 25,1978 the authorization for cancellation by Mrs. Marsha Mock Fontenot, stating that the judgment had been compromised with Mr. Olivier.
In the similar case of Palmer and Palmer v. Stire, 195 So.2d 706 (La.App. 1st Cir. 1967), writ of certiorari refused, 250 La. 645, 197 So.2d 899, the plaintiffs were attorneys who had obtained a judgment in favor of one Joseph Ory and against Theodore Griffin for the sum of $7,499, of date, March, 1960. In 1965, Griffin mortgaged land, and at the time of closing the loan paid Ory $4,000 in settlement of the judgment. Ory signed an authorization pursuant to which the clerk of court canceled the judgment. The attorneys then filed suit against the clerk of court and the mortgagee for judgment ordering the reinscription of the judgment in favor of Ory, and recognizing the judgment as being a first privilege on the property in preference to the mortgage. The court held that the attorney’s privilege on a judgment under LSA-R.S. 9:5001 is not protected as against a third party mortgagee, where no notice of the privilege has been filed in the mortgage records of the parish.
In Selly v. Watson, 210 So.2d 113 (La. App. 1st Cir. 1968), an attorney who had an oral contract for his services obtained judgment in favor of Selly and against Watson. The judgment was later seized by a third party creditor of Selly, and was sold by the sheriff and the funds were disbursed. The attorney who had obtained the judgment *471 then filed suit against the seizing third party creditor for money judgment for his fee, which he asserted under an alleged privilege against the judgment. In denying the claim of the attorney, the court stated:
“In Palmer & Palmer v. Stire, La.App., 195 So.2d 706, we discussed at length LSA-R.S. 9:5001 and R.S. 37:218 and stated that for an attorney’s lien and privilege to be effective against third parties the same must be recorded with the Clerk of the District Court either in the mortgage records or in the pending suit.
“Relator’s proper procedure in this matter was to have filed an affidavit asserting a lien and privilege at any time prior to the disbursement of the funds by the Sheriff. He could also have intervened in the suit for mandamus and urged his lien at that time.
“It was not until this present rule was filed that anyone other than Mr. Barnes and his client knew that he had undertaken the original litigation on a contingency fee basis or that he was owed anything by his client, Selly. Having waited until this late date he must now look to his client for his fee or any funds advanced by him on behalf of his client.”
In Roberts v. Hanover Insurance Company, 338 So.2d 158 (La.App. 2d Cir. 1976), an attorney, Wells, obtained a money judgment for Pollard against Roberts. Roberts filed a concursus proceeding depositing the amount of the judgment in the registry of the court and citing as claimants attorney Wells, who had a contingent fee contract with Roberts, and Hanover Insurance Company, who claimed a preference as a judgment creditor of Pollard and who had seized Roberts’ interest in the suit. After Hanover seized Roberts’ interest in the suit, Wells filed a copy of his written contingent fee contract in the record of the Pollard v. Roberts suit and in the record in the concur-sus proceeding. The court held that since attorney Wells asserted his claim prior to disbursement of the proceeds of the judgment, his privilege took first rank under LSA-R.S. 9:5001. Palmer, supra, was distinguished on the basis that it is authority only for the proposition that a written contingent fee contract under LSA-R.S. 37:218 must be filed as provided in the statute to be effective. The court distinguished Selly, supra, on the basis that it stands for the proposition that the attorney’s privilege (under LSA-R.S. 9:5001) must be asserted “in some manner prior to disbursement of the judgment proceeds to a third party.”
In the present case, we have already found that the contingent fee contract of November 18, 1974 is void as against public policy. Hence, we are no longer concerned with a claim by the attorney under the contract. The sole remaining issue is whether the attorney can assert his privilege under LSA-R.S. 9:5001. Under the rationale of the three cases discussed above, Palmer, Selly and Roberts, we conclude that the attorney in the present case lost his privilege as against the third party judgment debtor, Earl John Olivier, by failing to file an affidavit or other notice of his privilege under LSA-R.S. 9:5001 either in the mortgage records or in the suit record prior to the time the judgment was canceled by authorization of' the judgment creditor alone. As in Palmer and Selly, supra, the attorney in the present case could have protected his privilege in several ways. After the divorce, he could have obtained a new contingent fee contract and filed that in accordance with the procedures set forth in LSA-R.S. 37:218. Or, at the time he obtained the judgment or at any time thereafter prior to the time the authorization to cancel the judgment was filed, he could have filed an affidavit in the mortgage records of the parish asserting his privilege against the judgment. Such a procedure is provided by LSA-C.C. Articles 3274 and 3348. The use of either of these procedures would have put Mr. Olivier and the clerk of court on notice that attorney Viviano had a privilege against this judgment, and that it should not be canceled without his authorization.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that *472 there be judgment herein in favor of the plaintiff, Earl John Olivier, and against the defendant, Donald Doga, clerk of court, and the intervenor, Louis B. Viviano, ordering that Donald Doga, as clerk of court, and ex-officio recorder of mortgages in and for the Parish of St. Landry, cancel and erase from his mortgage records that certain judgment in Civil Suit No. 73360-2 on the docket of the Twenty-seventh Judicial District Court for the Parish of St. Landry, entitled “Marsha Mock Fontenot v. Earl John Olivier”, said judgment being dated April 28, 1978 and being in the sum of $16,363.22, and being recorded in Mortgage Book 504 at page 102. All costs in the trial and appellate courts are assessed against the intervenor, Louis B. Viviano.
REVERSED AND RENDERED.
GUIDRY, J., concurs in the result and assigns written reasons.