580 So.2d 533 (1991)
NEW ORLEANS PUBLIC SERVICE INC.
v.
Arlmon VANZANT, Jr., Vincent Glorioso, and Ronald Welcker.
No. 90-CA-2028.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1991.
James Maher, III, New Orleans, for New Orleans Public Service Inc.
*534 Michael F. Little, Lydia J. Alford, Metairie, for Arlmon Vanzant, Jr., Vincent Glorioso, Ronald Welcker and Glorioso, Welcker & Phayer (APLC).
Before SCHOTT, C.J., and LOBRANO and WARD, JJ.
WARD, Judge.
On July 24, 1977, Arlmon Vanzant, Jr. was involved in a motor vehicle accident with a streetcar that was operated by New Orleans Public Service Inc. (NOPSI). On August 7, 1978, Messers. Ronald Welcker and Vincent Glorioso, representing Vanzant as attorneys, filed suit against NOPSI.
The trial court awarded Arlmon Vanzant, Jr. damages in the amount of $534,239.76 plus judicial interest from date of judicial demand. This decision was appealed and this court amended the decision, increasing the award of damages to $808,212.00. NOPSI's application for writs of certiorari to the Louisiana Supreme Court were denied.
Thereafter, Messrs. Vincent Glorioso and Ronald Welcker sent a demand letter to NOPSI requesting payment of the judgment of $808,212.00, and the judicial interest which they calculated to be $1,051,161.00 through February 19, 1988. NOPSI ultimately paid what was demanded, more than $2,000,000.00, by means of a draft naming the attorneys and their clients as payees.
NOPSI, at a later date, determined that the judicial interest due to Arlmon Vanzant, Jr. was $958,788.00 allegedly resulting in NOPSI overpaying interest by more than $100,000.00. After amicable demand NOPSI filed suit to recover this overpayment against Messrs. Vincent Glorioso, Ronald Welcker and their client, Arlmon Vanzant, Jr.
NOPSI obtained a default judgment in the lower court. Glorioso, Welcker and Vanzant appealed and this Court reversed because NOPSI failed to present a prima facie case. After remand NOPSI filed a supplemental and amending petition adding Glorioso, Welcker and Phayer, a professional law corporation, as defendants. Counsel for Vincent Glorioso and the Glorioso, Welcker & Phayer law firm filed an exception of no cause of action which the trial court sustained. Because Mr. Welcker filed application for Chapter 11 Bankruptcy, all proceedings against him have been stayed. Mr. Vanzant, represented by the same counsel, filed an answer, but judgment has recently been rendered against him and in favor of NOPSI for $107,306.93.
The sole issue on appeal is whether or not a judgment debtor who claims it overpaid a judgment has stated a cause of action not only against the client but against the attorneys of a client.
We conclude that NOPSI has stated a cause of action and we reverse.
In determining if a petition states a cause of action, whether or not the allegations are true is immaterial. For the purposes of this opinion, we will consider as proven the allegation that NOPSI paid more than was owed in legal interest, and that overpayment was made by a draft sent to Messrs. Glorioso and Welcker, naming them and their client as joint payees.
NOPSI contends they are entitled to recover under theories of quasi contract and unjust enrichment.
Art. 2293. Quasi contracts, definition
Quasi contracts are the lawful and purely voluntary act of a man, from which there results any obligation whatever to a third person, and sometimes a reciprocal obligation between the * parties. (*English translation of French text incomplete; should include "two".)
Art. 2294. Acts giving rise to quasi contracts
All acts, from which there results an obligation without any agreement, in the manner expressed in the preceding article, form quasi contracts. But there are two principal kinds which give rise to them to wit: The transaction of another's business, and the payment of a thing not due.
Art. 2301. Obligation to restore thing unduly received

*535 He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it.
Art. 2302. Right to reclaim thing unduly paid
He who has paid through mistake, believing himself a debtor, may reclaim what he has paid.
Art. 2304. Thing not due
A thing not due is that which is paid on the supposition of an obligation which did not exist, or from which a person has been released.
A cause of action is stated in unjust enrichment when there is an enhancement of one estate at the expense of another estate, without cause recognized by law, and for which no other remedy is readily apparent and available. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967). Although quasi contract are particular forms of unjust enrichment, they are not exclusive. Thus, the claim of unjust enrichment can be made even against strangers to a contract and even against third parties such as attorneys in a lawsuit.
The appellees contend that as attorneys they are disclosed agents of a principal who is their client, and the funds transmitted by NOPSI, although mailed to and transmitted by draft jointly payable to appellees and their client, are the property of their client alone, Mr. Vanzant. As a consequence, they argue, they are third parties who did not "receive" the alleged overpayment within the meaning of La.C.C. Art. 2301, supra.
Two appellate courts have concluded that an attorney is a third party that is not liable under C.C. Art. 2301 for restitution of a thing received by a client but not due. Great American Indemnity Company v. Dauzat, 157 So.2d 308 (La.App. 3rd Cir. 1963); Louisiana Health Service & Indem. Co. v. Cole, 418 So.2d 1357 (La.App. 2d Cir.1982). In each case the court reasoned that the attorney was a third party and held that a party seeking restitution under C.C. art. 2302 cannot pursue third party transferees for restitution. The cases are somewhat different from this case. In those cases the obligor was released from an obligation that once existed, while in this case the obligation did not exist; overpayment was by error, and there was never any cause, legal or natural. Nevertheless, each factual situation is within La.C.C. Art. 2304, supra, and the difference is immaterial. We, nonetheless, decline to follow those cases, for the following reasons. First, neither Dauzat nor Cole considered whether there was a claim for unjust enrichment when the patrimony of third party transferees has been enriched without cause and secondly, when NOPSI named Messrs. Glorioso and Welcker and their client as joint payees and transmitted the check to Messrs. Glorioso and Welcker, NOPSI paid a thing not due directly to both an attorney and his client, and the attorney is not a mere third party. As a matter of fact, an attorney may, and usually does, have a contract with his client whereby the attorney may acquire as his fee an interest in the subject matter of the suit.
R.S. 37:218 Contract for fee based on proportion of subject matter; stipulation concerning compromise, discontinuance, or settlement
A. By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property. In such contract, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue, or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client's domicile. After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim *536 shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition had been made.

* * * * * *
When the contract is recorded, as a practical matter, the attorney and his client must be named payees. Furthermore, on January 14, 1985, after the decisions in Dauzat and Cole, supra, our Supreme Court adopted Disciplinary Rule 9-102.
DR 9-102 Preserving Identity of Funds and Property of a Client
A. All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank or insured depository institution accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
* * * * * *
2. Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
Therefore, when a check or draft names attorneys as co-payees, the attorneys at the very least must endorse and deposit the check or draft in a trust account, from which they are free to withdraw their fee when due. This is sufficient to show that the attorneys, and especially those who have been assigned an interest in the lawsuit, are recipients of the payment of a thing not due; the attorney is not merely a third party, and a cause of action lies for restitution either under C.C. Art. 2302 or for unjust enrichment. Moreover, if there was an attorney client contract whereby the attorneys acquired an interest in the suit, La.R.S. 37:218 applies and not only has NOPSI stated a cause of action against these defendants, they may even be necessary parties to the lawsuit. La.C.C.P. Art. 642.
REVERSED AND REMANDED.